UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. 4:17-CR-033-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARIANO CASTILLO, | |
| Defendant. | |

# INTRODUCTION

The Court has before it a motion to suppress evidence filed by defendant Mariano Castillo. The Court held an evidentiary hearing and took testimony from the arresting officer, Eric Duke. At the conclusion of that hearing, the Court took the motion under advisement, and ordered further briefing. That briefing has now been received. After considering the testimony of Officer Duke, the video of the Officer's body camera, and the briefing by counsel, the Court will deny the motion for the reasons explained below.

# FACTUAL BACKGROUND

On January 11, 2017, Nampa Police Department Officer Eric Duke received a tip that Castillo might be dealing drugs from his home. After setting up surveillance on Castillo's home, Officer Duke observed a vehicle leaving with no taillights after dark. He called for a drug detection canine, and pulled the vehicle over, immediately recognizing Castillo in the driver's seat. Officer Duke knew that Castillo was a

documented gang member, and had been found six months earlier with drugs and a firearm, for which he received a felony conviction.

Officer Duke asked Castillo for his driver's license, registration and proof of insurance. Castillo provided his driver's license, but could not locate the vehicle registration or proof of insurance. Officer Duke asked Castillo where he was coming from and whether the address on his driver's license was current. After Castillo answered those questions, Officer Duke then engaged in the following exchange with Mr. Castillo:

> Officer Duke: Do me a favor, just keep your hands up where I can see 'em, okay. I know last time I was with you, you had a gun, okay. Is there anything illegal in the vehicle?
> Mr. Castillo: No
> Officer Duke: Knives, drugs, guns, weapons of mass destruction?
> Mr. Castillo: No.
> Officer Duke: Nothing like that?
> Mr. Castillo: [Inaudible]
> Officer Duke. Okay. Umm . . . . Would you give me permission to search the vehicle to make sure that's a true and honest statement?
> Mr. Castillo: Honestly, it's not my vehicle.
> Officer Duke: Okay.
> Mr. Castillo: A friend just let me use it, that's why I'm looking for the registration.
> Officer Duke: Okay. Did you, uh, did you waive your rights, to, uh, Fourth Amendment rights to search and seizure?
> Mr. Castillo: I don't.
> Officer Duke: You don't waive your rights?
> Mr. Castillo: No, I don't waive my rights.
> Officer Duke: When you signed your paperwork, you're on felony probation right?
> Mr. Castillo: What's that?
> Officer Duke: Are you on probation?
> Mr. Castillo: Am I on probation…?
> Officer Duke: You're on felony probation right? Did you waive your Fourth Amendment rights for search and seizure on felony probation?
> Mr. Castillo: Um, I don't remember.

> Officer Duke: Ok. Alright. And there's nothing illegal in this vehicle?
> Mr. Castillo: No.
> Officer Duke: You don't have any firearms or anything on you this time?
> Mr. Castillo: No.
> Officer Duke: Okay. Do me a favor, bro, just hang tight. Okay. Keep your hands up, you know, where I can see them, just because you did have a gun last time. Okay. I want to make sure that's not the case again. Just hang tight, and I'll be right back with you.
> Mr. Castillo: Alright.

After this, Officer Duke turned back toward his car, but after a few seconds reversed direction back to the passenger window. He initiated another exchange with the passengers:

> Officer Duke: Where you guys headed, dude?
> Mr. Castillo: What's that?
> Officer Duke: Where are you heading?
> Mr. Castillo: Where am I heading?
> Officer Duke: Yeah.
> Mr. Castillo: Well, I was going to go to the gas station, put in some gas.
> Officer Duke: That's the only place you're going?
> Mr. Castillo: Yeah.
> Officer Duke: What are you reaching for?
> Mr. Castillo: Huh?
> Officer Duke: How come you're reaching around?
> Mr. Castillo: [unintelligible]
> Officer Duke: Okay. Any alcohol or anything to drink today?
> Mr. Castillo: Mmmm . . . I probably had a couple drinks.
> Officer Duke. A couple drinks? Ok. Because your eyes are bloodshot and glassy.
> Mr. Castillo: Alright.
> Officer Duke: Too much to drink to be driving?
> Mr. Castillo: No.
> Officer Duke: We'll go through that process here in just a few minutes, okay?

Officer Duke then returned to his patrol car, where he ran Castillo's name and learned that Castillo's driver's license had been suspended indefinitely. He decided to

arrest Castillo but felt it was necessary to wait for a backup officer due to safety concerns.

About two and a half minutes later, Officer Gray arrived at the scene. When Officer Gray arrived, Officer Duke asked him to use his canine to conduct a narcotics sniff of the car and informed Gray that he intended to arrest Castillo for driving on a suspended license. Officer Gray requested that Castillo be placed in custody prior to conducting the exterior sniff due to Castillo's history.

About 7 minutes after pulling Castillo over, the Officers placed him under arrest and secured him in the back of Officer Duke's patrol car. Officer Gray had his canine conduct an open-air search around the vehicle. After the dog alerted, officers searched the car and discovered the controlled substances and ammunition that form the basis of the charges in the Indictment.

## ANALYSIS

The Supreme Court has held that "because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose." *Rodriguez v. U.S.,* 135 S.Ct. 1609, 1614 (2015). The "tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission – to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.*

Once Officer Duke arrested Castillo, the traffic stop was transformed into an arrest situation and *Rodriguez* no longer applies. Castillo does not argue to the contrary. Instead, he argues that the traffic stop had already been unduly delayed under *Rodriquez*

before Officer Duke effectuated the arrest, and therefore the Government cannot use the arrest to get around *Rodriguez*.

The Court disagrees. *Rodriguez* allows the officer to "attend to related safety concerns." *Id.* Here, Officer Duke's testimony – which the Court finds credible – establishes that when he pulled over Castillo for the broken taillights, he immediately recognized Castillo to be a documented gang member who had recently been found with drugs and a firearm and was a convicted felon. Officer Duke's questions to Castillo related directly to ensuring his safety given his knowledge of Castillo. Because Officer Duke was entitled under *Rodriguez* to ask such questions to ensure his safety, and because he did so promptly (there was only a relatively short 7-minute interval between the time the car was pulled over and the time that Castillo was arrested), the Court cannot find any violation of *Rodriguez*. The motion is denied.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to suppress (docket no. 16) is DENIED.

DATED: August 29, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court